# 24-3090

# United States Court of Appeals
# for the Second Circuit

MARIO E. CASTRO,

*Plaintiff-Appellant,*

-against-

NEWREZ, LLC, DOING BUSINESS AS SHELLPOINT MORTGAGE
SERVICING, EXPERIAN INFORMATION SOLUTIONS, INC.,
TRANS UNION LLC, EQUIFAX INFORMATION SERVICES LLC,
THE BANK OF NEW YORK MELLON, REAL TIME SOLUTIONS, INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES
## NEWREZ LLC, DOING BUSINESS AS SHELLPOINT
## MORTGAGE SERVICING AND THE BANK OF
## NEW YORK MELLON

AKERMAN LLP
*Attorneys for Defendants-Appellees*
*NewRez LLC, doing business as Shellpoint Mortgage*
*Servicing and The Bank of New York Mellon*
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
(212) 880-3800
jordan.smith@akerman.com

3649



## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

| | |
|---|---|
| MARIO E. CASTRO,<br><br>                               Plaintiff-Appellant,<br><br>-against-<br><br>NEWREZ LLC, DOING BUSINESS AS SHELLPOINT MORTGAGE SERVICING, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, EQUIFAX INFORMATION SERVICES LLC, THE BANK OF NEW YORK MELLON, REAL TIME SOLUTIONS, INC.,<br><br>                              Defendants-Appellees, | Case No. 24-3090 |

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for appellees Newrez LLC d/b/a Shellpoint Mortgage Servicing and The Bank of New York Mellon hereby certify that

(1) Newrez LLC dba Shellpoint Mortgage Servicing is a wholly-owned subsidiary of Shellpoint Partners LLC, a Delaware limited liability company. Shellpoint Partners LLC is a wholly-owned subsidiary of NRM Acquisition LLC and NRM Acquisition II LLC, Delaware limited liability companies. Both NRM Acquisition entities are wholly-owned subsidiaries of New Residential Mortgage LLC, a Delaware limited liability company. New Residential Mortgage LLC is a wholly-owned subsidiary of Rithm Capital Corp. a Delaware corporation. Rithm Capital Corp., fka New Residential Investment Corp., is publicly traded on the New

York Stock Exchange under the ticker symbol RITM, and was previously traded under the ticker symbol NRZ.  No corporation owns 10% or more of Rithm Capital Corp.'s stock.

(2) The Bank of New York Mellon Inc., a Delaware corporation, is a publicly held company.  No corporation owns 10% or more of its stock.

Dated:  New York, New York
       July 2, 2025

**AKERMAN LLP**
By: /s/ *Jordan M. Smith*
    Jordan M. Smith, Esq.
    jordan.smith@akerman.com
    1251 Avenue of the Americas, 37th Floor
    New York, New York 10020
    Tel: (212) 880-3800
    Fax: (212) 880-8965
    *Attorneys for Appellees Newrez LLC*
    *d/b/a Shellpoint Mortgage Servicing and*
    *The Bank of New York Mellon*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................ i

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............................1

STATEMENT OF THE CASE.............................................................................1

SUMMARY OF THE ARGUMENT ...................................................................4

    I.     MR. CASTRO DID NOT SHOW HE HAD STANDING........................4

    II.    THE JUDGMENT WAS PROCEDURALLY PROPER...........................5

    III.   MR. CASTRO WAS NOT DENIED DUE PROCESS.............................5

ARGUMENT ......................................................................................................5

    I.     MR. CASTRO LACKED STANDING....................................................5

    II.    THE JUDGMENT WAS IN PROPER FORM.........................................9

    III.   MR. CASTRO WAS ACCORDED DUE PROCESS. ...........................10

CONCLUSION .................................................................................................11

CERTIFICATION OF COMPLIANCE ..............................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bandler v. Town of Woodstock,*
832 Fed.Appx 733 (2d Cir. 2020)........................................................8

*Castro v. Bank of New York Mellon, et al.,*
Case No. 2:17-cv-04375-JS-GXB (E.D.N.Y. Jul. 24, 2017)............................1

*Castro v. Bank of New York Mellon, et al.,*
No. 20-264, 2020 WL 2542864 (W.D.N.C. May 4, 2020) ................................1

*Germalic v. N.Y. Bd of Elections Comm'rs,*
466 Fed.Appx 54 (2d Cir. 2012)........................................................7

*Greene v. WCI Holdings Corp.,*
136 F.3d 313 (2d Cir. 1998) ........................................................11

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.,*
710 F.3d 71 (2d Cir. 2013) ........................................................8

*Otis v. City of Chicago,*
29 F.3d 1159 (7th Cir. 1994) ........................................................9

*TransUnion LLC v. Ramirez,*
141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021)......................................5, 6

*Yourish v. Calif. Amplifier,*
191 F.3d 983, 989 (9th Cir. 1999) ................................................11

## Statutes

28 U.S.C. § 1291 ........................................................1

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ................................1

N.Y. UCC § 9-210 ........................................................3

N.Y. UCC § 9-625 ........................................................5, 10, 11

Uniform Commercial Code........................................................1, 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................1

Fed. R. Civ. P. 58 ...........................................................................5, 9, 10

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction over the appeal of a judgment of the District Court entered May 16, 2024, pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.     Whether the District Court properly dismissed plaintiff-appellant Mario E. Castro's First Amended Complaint dated April 2, 2023, pursuant to Fed. R. Civ. P. 12(b)(1) due to Mr. Castro's lack of constitutional standing.

## STATEMENT OF THE CASE

The underlying lawsuit was the latest in a series filed by Mr. Castro in an effort to avoid repaying a nearly $450,000 mortgage loan debt or to harass his loan servicer and owner of his loan. *See, e.g., Castro v. Bank of New York Mellon et al*., No. 20-264 (W.D.N.C. May 4, 2020); *Castro v. Bank of New York Mellon, et al.,* Case No. 2:17-cv-04375-JS-GXB (E.D.N.Y. Jul. 24, 2017).  This time, Mr. Castro asserted NewRez LLC d/b/a Shellpoint Mortgage Servicing (**Shellpoint**) violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. (**FCRA**), and defamed him through inaccurate credit reporting.  He also claimed Shellpoint and the Bank of New York Mellon, Inc. (**BoNYM**), the trustee of the trust that owned his loan, violated section 9-210 of both the model Uniform Commercial Code and the New York Uniform Commercial Code by failing to respond to his request for an accounting.  Shellpoint's and BoNYM's motion to dismiss the amended complaint (as well as the separate

motions by the other defendants-appellees) was granted on September 19, 2024, and Mr. Castro appealed.

Mr. Castro executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Bank, N.A., its successors and assigns, dated March 7, 2006, pledging the real property commonly known as 419 West Hills Road, Melville, New York, as security for the repayment of the loan in the amount of $448,800. Declaration of Aliza Malouf dated November 9, 2023, ¶ 2, Ex. A (ECF Doc. 71-2 at 1, 3-26). The mortgage was assigned to BoNYM by assignment dated September 1, 2011. *Id.*, ¶ 3 (ECF Doc. 71-2 at 27-31).

Mr. Castro claims his debt was paid in full in March 2006 when the "promissory note . . . was accepted as collateral for the loan of credit in accords with the law." First Amended Complaint dated April 2, 2023 (**FAC**), ¶ 38-39 (ECF Doc. 16). Citing to the "Federal Reserve Act, Congressional Act of March 9, 1933 and Federal Reserve operating circular 10", Mr. Castro pled "the note had already been deposited and federal reserve bank notes have been issued to the bank who deposited the promissory note." FAC at 11. Mr. Castro concludes, "no money is owed to the current creditor/investor . . . and therefore no balance is owed nor should be reported" to the CRAs. FAC, ¶ 38.

Mr. Castro sent a "direct dispute" to Shellpoint "[o]n or about January and February of 2019 . . . disput[ing] the entire loan and request[ing] proof of claim to

2

validate and verify the alleged loan." FAC, ¶ 34, Ex. B at 47. Mr. Castro claims he checked his credit report on October 15, 2020, and identified "inaccuracies/incomplete information being reported." FAC, ¶ 26. He sent dispute letters to the CRAs in October 2020 "disputing an alleged mortgage account and all information uploaded by Shellpoint." Id., ¶ 26. Mr. Castro concedes his disputes were investigated, id. ¶¶ 28-29 and Ex. C, but alleges "[d]efendants . . . continue to not do a reasonable investigation/reinvestigation as the alleged mortgage account was not being reported with maximum possible accuracy." Id., ¶ 32. Specifically, Shellpoint purportedly failed to report that federal reserve notes were received in exchange for plaintiff's promissory note that was converted to a draft and deposited in a deposit account with the local Federal Reserve Agent therefore no money is owed to Shellpoint or BoNYM. Id., ¶ 65.

In November 2022—after this lawsuit was filed—Mr. Castro claims he sent Shellpoint, BoNYM, and co-defendant-appellee Real Time Solutions, Inc. "Requests for an Accounted Accounting" pursuant to section 9-210 of the model Uniform Commercial Code and New York UCC, demanding responses within fourteen days. FAC, ¶ 35 and Ex. B at 38-42. Mr. Castro claims Shellpoint and BoNYM violated UCC § 9-210 by failing to timely respond to his request for accounting. Id.

Mr. Castro commenced the underlying action in the U.S. District Court for the Eastern District of New York on October 13, 2022. He filed an amended complaint

on April 4, 2023, which the Court directed be accepted on April 18, 2023. ECF Docs. 14-16. Shellpoint and BoNYM moved to dismiss the amended complaint on November 9, 2023. ECF Doc. 71. Mr. Castro opposed the motion on February 1, 2024. ECF Doc. 69. Shellpoint and BoNYM served a reply memorandum on February 12, 2024. ECF Doc. 72.

The District Court (Hon. Pamela Chen) granted Shellpoint and BoNYM's motion to dismiss, as well as the motions of the other moving defendants-appellees, by Memorandum & Order dated September 19, 2024. ECF Doc. 82. The Clerk entered judgment on September 20, 2024. ECF Doc. 83. Mr. Castro served a motion for reconsideration on October 17, 2024, which the Court denied by minute entry on October 23, 2024. ECF Doc. 84, Appendix at 11. Mr. Castro appealed on November 22, 2024. ECF Doc. 85.

## SUMMARY OF THE ARGUMENT

## I.  MR. CASTRO DID NOT SHOW HE HAD STANDING.

The District Court dismissed Mr. Castro's amended complaint because he did not satisfy the three-prong test for Article III standing. Mr. Castro's informal opening brief does not point to any injury-in-fact that is fairly traceable to conduct of Shellpoint or BoNYM, fixating instead on claimed technical violations of statutes with no explanation of the harm they caused him.

## II.     THE JUDGMENT WAS PROCEDURALLY PROPER.

Mr. Castro wrongly contends that the judgment, ECF Doc. 83, is improper and violative of Fed. R. Civ. P. 58.  Contrary to his argument, a judgment need not be signed by a judge, but may be entered by the clerk.  The other arguments in the motion for reconsideration were correctly denied.

## III.     MR. CASTRO WAS NOT DENIED DUE PROCESS.

In his motion for reconsideration, Mr. Castro argued the Court denied him due process by "disregarding evidence of promissory note repayment, inaccuracies in credit reporting, and statutory clams under UCC § 9-625." The Court carefully examined all of Mr. Castro's claims and properly dismissed the unviable complaint.

## ARGUMENT

## I.     MR. CASTRO LACKED STANDING.

The District Court thoroughly considered the standing issue and properly concluded Mr. Castro's amended complaint did not plead any claims that can satisfy constitutional standards.  "Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021) (internal citations and quotations omitted). "As the party invoking federal jurisdiction, the plaintiff[] bear[s] the burden of demonstrating that [he] ha[s]

standing." *Id.* at 2207. "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 2203.

Mr. Castro's lawsuit was premised on his belief that he did not owe any debt because it was satisfied in 2006 when the promissory note was purportedly exchanged for federal reserve notes. FAC ¶¶ 22, 27, 31, 36, 38-39, 44, 61, 63-66, and Request for Judicial Notice. Mr. Castro claims, as a result of Shellpoint's and BoNYM's purported conduct, he suffered a diminished credit score, loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on credit applications, and the mental and emotional distress and pain, anguish, humiliation, and embarrassment caused by the inability to obtain financing for everyday expenses, bank account denials, denials of credit and credit card applications, higher interest rates on loans and credit cards that would otherwise be affordable. FAC ¶¶ 67, 76, 83. There is no basis to conclude the injuries Mr. Castro purportedly suffered were caused by Shellpoint or BoNYM. Rather, the "likely cause[ ]" of Mr. Castro's alleged injuries is Mr. Castro's own failure to pay his debts based on his erroneous reliance on frivolous sovereign citizen legal theories. Similarly, because Mr. Castro is the cause of his own injury, it is highly unlikely his injury would "be redressed by judicial relief."

The District Court assumed, without deciding, that Mr. Castro pled an "injury-in-fact," the first prong of the standing test, in the form of denied credit applications, and non-receipt of an "authenticated record of accounting" for his mortgage loan. Appendix at 19-20 (ECF Doc. 82.) The basis for dismissal was that the amended complaint did not plead a causal connection between Shellpoint or BoNYM's conduct and his claimed injury, *i.e.*, the second essential prong of the standing test. *See*, *e.g.*, *Germalic v. N.Y. Bd of Elections Comm'rs*, 466 Fed.Appx 54, 55 (2d Cir. 2012) (affirming dismissal on standing grounds where purported injury was not traceable to the alleged conduct).

The appellant's brief has no coherent response to this basic point. Rather than try to show his complaint did plead facts connecting the alleged statutory violations to a concrete harm, Mr. Castro argues, "Appellant demonstrated harm from inaccuracies in credit reporting, including inconsistent account details across credit reporting agencies[.]" App. Brief at 3. He then goes on to list the purported effects of this as "diminished credit score, loss of credit, loss of the ability to purchase and benefit from credit" and similar phrases. App Br. at 4. The District Court did not ignore this argument, but rather correctly concluded Mr. Castro "fails to allege any facts supporting a causal connection between the inaccuracies and the denial of credit." Appx. at 23. The amended complaint never specifies any credit for which Mr. Castro applied and was denied or offered different terms, let alone connect any

such result from a credit application to BoNYM or Shellpoint's conduct. *See* FAC (ECF Doc. 16.) The Court correctly held the amended complaint did not adequately plead facts giving rise to Article III standing on that basis.

The District Court also noted that Mr. Castro's claim to standing was fundamentally unsound to the extent he maintained giving a new promissory note somehow constituted satisfaction of the prior obligation. Mr. Castro mentions the argument in passing but criticizes the District Court decision for not crediting his claims that defendants did not reasonably investigate his clams. App. Brief at 3. The problem with his argument is that if, as the District Court noted, the purported inaccuracy in the reporting derives from the claim that Mr. Castro gave another promissory note, that is just another reason he does not have standing. Unilaterally giving a new promissory note—instead of paying the actual money owed—does not satisfy a debt. As such, the District Court correctly drew "the only plausible inference," *i.e.*, that Mr. Castro's "decision to try to satisfy his outstanding mortgage loan balance with a promissory note, as opposed to real money [] caused his claimed injuries[.]" Appx. at 21. An injury that is "completely due to plaintiff's own fault" may break the causal chain in such a way to eliminate a plaintiff's standing. *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013); *cf. Bandler v. Town of Woodstock*, 832 Fed.Appx 733, 735 (2d Cir. 2020) (no standing to sue for payment of filing fee that plaintiff could have, but did not, have

refunded to him). Because any issue Mr. Castro may have with the credit reporting on his loan derives from his own non-payment of the debt, any injury to his credit is self-inflicted and not a basis for standing.

Mr. Castro's complaint also pled no specific, plausible damages due to failure to receive an accounting. Therefore, the District Cour was correct in dismissing that claim for lac of standing, as well. Appendix at 23-24.

## II.     THE JUDGMENT WAS IN PROPER FORM.

Mr. Castro argued on reconsideration that the judgment was in improper form because it was not signed by a judge. In denying the motion, the District Court explained that the plain words of Federal Rule of Civil Procedure 58 provide "the clerk" must prepare and enter the judgment.

To be more specific to the situation here, the rule actually requires the clerk must "promptly" prepare and enter judgment "without awaiting the court's direction" when the court denies all relief. Fed. R. Civ. P. 58(b)(1)(C). The District Court's memorandum and order dated September 19, 2024, provided for dismissal of all of Mr. Castro's claims and, as such, the court denied him all relief. The Clerk properly entered the judgment. *Cf. Otis v. City of Chicago*, 29 F.3d 1159, 1163 (7th Cir. 1994) ("Rule 58 puts the onus of preparing a judgment squarely on the shoulders of the clerk of the district court.") Judges need only prepare and approve the judgment when a jury returns a special verdict or if some unusual relief not covered in Rule

58(b) is awarded.  *See* Fed. R. Civ. P. 58(b)(2)(A)-(B).  No such unusual circumstance arose here.

## III.     MR. CASTRO WAS ACCORDED DUE PROCESS.

Mr. Castro contends the District Court "failed to provide a full and fair adjudication, disregarding evidence of the promissory note repayment, inaccuracies in credit reporting, and statutory claims under UCC § 9-625." App Br. at 6.  It would be hard to be more wrong.  Far from "disregarding" Mr. Castro's argument and "evidence,' the District Court thoroughly discussed those arguments and why they did not suffice to state a cognizable legal claim.  Mr. Castro only complains about the fairness of the adjudication because he lost.

With regard to the "promissory note payment," the District Court quoted the allegation from paragraph 38 of the amended complaint but then explained "there is no basis for concluding that a mortgage loan, i.e., a promise to pay, can be satisfied by yet another promise to pay." Appx at 21.  Mr. Castro cites no legal authority in support of his argument, and understandably so.  There is no such authority because the notion is preposterous.  It would effectively render all debt obligations unenforceable.  The District Court correctly rejected the theory.

Nor did the District Court overlook Mr. Castro's grievances about inaccurate credit reporting or the purported failure to comply with N.Y. UCC § 9-625.  This was addressed on pages 10 through 12 of the Memorandum & Order, which recount

the allegations and explain the alleged inaccurate credit reporting did not meet causation standards sufficient to meet Article III standing requirements and did not plead an injury-in-fact from the alleged non-compliance with UCC § 9-625.

Even if the Court had not directly discussed the allegations in Mr. Castro's complaint in the decision dismissing that pleading, it would not be a due process violation. Nothing mandates a particular amount of detail in a judicial decision, and so even if no explanation had been given, that would not invalidate the order. *See Yourish v. Calif. Amplifier*, 191 F.3d 983,989 (9th Cir. 1999). The dismissal of a legally infirm complaint, such as Mr. Castro's, is proper and not a violation of due process rights. *Cf. Greene v. WCI Holdings Corp*., 136 F.3d 313, 315-316 (2d Cir. 1998) (dismissal of complaint without oral hearing does not violate due process).

## CONCLUSION

For the foregoing reasons, the Court should affirm in all respects the dismissal of Mario Castro's First Amended Complaint. That pleading did not set forth facts raising a plausible claim to Article III standing to sue Shellpoint and BoNYM.

Dated: July 1, 2025

### AKERMAN LLP

By:   <u>*/s/ Jordan M. Smith*</u>
      Jordan M. Smith
      1251 Avenue of the Americas, 37th Floor
      New York, NY 10020
      (212) 880-3800
      *Attorneys for Defendants-Appellees Newrez*
      *LLC d/b/a Shellpoint Mortgage Servicing and*
      *The Bank of New York Mellon, Inc.*

## CERTIFICATION OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief is 12 pages long and contains 2,672 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: July 1, 2025

**AKERMAN LLP**

By:     */s/ Jordan M. Smith*
       Jordan M. Smith
       1251 Avenue of the Americas, 37th Floor
       New York, NY 10020
       (212) 880-3800
       *Attorneys for Defendants-Appellees Newrez LLC d/b/a Shellpoint Mortgage Servicing and The Bank of New York Mellon, Inc.*