# 24-3090

## 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔖𝔢𝔠𝔬𝔫𝔡 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

MARIO E. CASTRO,

*Plaintiff-Appellant,*

-against-

NEWREZ, LLC, DOING BUSINESS AS SHELLPOINT
MORTGAGE SERVICING, EXPERIAN INFORMATION
SOLUTIONS, INC., TRANS UNION LLC, EQUIFAX
INFORMATION SERVICES LLC, THE BANK OF NEW YORK
MELLON, REAL TIME SOLUTIONS, INC.,

*Defendants-Appellees.*

On Appeal From The United States District Court
For The Eastern District of New York

**BRIEF FOR DEFENDANTS-APPELLEES EXPERIAN INFORMATION
SOLUTIONS, INC., TRANS UNION LLC, AND EQUIFAX INFORMATION
SERVICES LLC**

Camille R. Nicodemus
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
10333 N. Meridian St., Suite 200
Indianapolis, IN 46290
(317) 497-5600, Ext. 601

*Counsel for Defendant-Appellee
Trans Union LLC*

Eric F. Barton
SEYFARTH SHAW LLP
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
(404) 885-6772

*Counsel for Defendant-Appellee
Equifax Information Services, LLP*

Meir Feder
JONES DAY
250 Vesey Street
New York, New York 10281
(212) 326-7870

*Counsel for Defendant-Appellee Experian
Information Solutions, Inc.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel states that Defendant-Appellee Experian Information Solutions, Inc. is a wholly owned subsidiary of Experian plc. Experian plc is registered as a public company in Jersey, Channel Islands, and is publicly traded on the London Stock Exchange.

Dated: July 8, 2025

/s/ Meir Feder
Meir Feder

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel states that Defendant-Appellee Trans Union LLC is a wholly owned subsidiary of TransUnion Intermediate Holdings, Inc. TransUnion Intermediate Holdings, Inc. is wholly owned by TransUnion. TransUnion is a publicly traded entity on the New York Stock Exchange under ticker symbol: TRU. Massachusetts Financial Services Company, a publicly traded entity, owns 10% or more of TransUnion's stock. No public company directly owns 10% or more of the ownership of Trans Union LLC.

Dated: July 8, 2025

/s/ Camille Nicodemus
Camille Nicodemus

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel states that Defendant-Appellee Equifax Information Services LLC's parent company, Equifax Inc., is a publicly traded company on the NYSE. It has no other corporation owning more than 10% of its stock.

Dated: July 8, 2025

<u>/s/ Eric Barton</u>
Eric Barton

# TABLE OF CONTENTS

**Page**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT FOR
    DEFENDANT-APPELLEE EXPERIAN INFORMATION
    SOLUTIONS, INC. ........................................................................ I

RULE 26.1 CORPORATE DISCLOSURE STATEMENT FOR
    DEFENDANT-APPELLEE TRANS UNION LLC ..................................... II

RULE 26.1 CORPORATE DISCLOSURE STATEMENT FOR
    DEFENDANT-APPELLEE EQUIFAX INFORMATION SERVICES
    LLC ......................................................................................... III

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

STATEMENT OF ISSUES ......................................................................... 4

STATEMENT OF THE CASE ...................................................................... 5

STANDARD OF REVIEW .......................................................................... 8

ARGUMENT ......................................................................................... 8

    I.    The District Court Correctly Dismissed Castro's Claims Due
        To His Lack Of Article III Standing. ............................................. 9

    II.   The Amended Complaint In Any Event Failed To Allege Any
        Cognizable Claim. ................................................................. 12

CONCLUSION ..................................................................................... 18

CERTIFICATE OF SERVICE .................................................................... 19

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*,
   634 F.3d 112 (2d Cir. 2011) ............................................................12

*Adirondack Transit Lines, Inc. v. United Transp. Union*,
   305 F.3d 82 (2d Cir. 2002) ................................................................8

*Analytical Survs., Inc. v. Tonga Partners, L.P.*,
   684 F.3d 36 (2d Cir. 2012) ..............................................................17

*Antonyuk v. James*,
   120 F.4th 941 (2d Cir. 2024) .............................................................9

*Braun v. Client Servs. Inc.*,
   14 F. Supp. 3d 391 (S.D.N.Y. 2014) .................................................15

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016) ...........................................................8, 12

*Cohen v. Equifax Info. Svcs. LLC*,
   827 F. App'x 14 (2d Cir. 2020) ........................................................13

*D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*,
   756 F.3d 151 (2d Cir. 2014) ...............................................................8

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008) ...........................................................................9

*Farkash v. RJM Acquisitions Funding, Inc.*,
   2012 WL 1948643 (S.D.N.Y. May 29, 2012) ...................................15

*Heldman on Behalf of T.H. v. Sobol*,
   962 F.2d 148 (2d Cir. 1992) .............................................................10

*Mader v. Experian Info. Sols., Inc.*,
   56 F.4th 264 (2d Cir. 2023) ...........................................2, 3, 13, 14

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Moreira v. Societe Generale, S.A.*,
   125 F.4th 371 (2d Cir. 2025) ...................................................9

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,
   710 F.3d 71 (2d Cir. 2013) ...................................................10

*Reyes v. Equifax Info. Servs., L.L.C.*,
   140 F.4th 279 (5th Cir. 2025) ...............................................13

*Ritchie v. N. Leasing Sys., Inc.*,
   14 F. Supp. 3d 229 (S.D.N.Y. 2014) .....................................15

*Rogers v. Equifax Info. Servs. LLC*,
   2024 WL 2862363 (E.D.N.Y. June 6, 2024) .........................16

*Shimon v. Equifax Info. Servs. LLC*,
   994 F.3d 88 (2d Cir. 2021) ...................................................13

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) ...................................................17

*Simon v. Bank of America, N.A.*,
   2021 WL 148650 (E.D.N.Y. Jan. 15, 2021) ...........................14

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016).................................................................9

*St. Pierre v. Dyer*,
   208 F.3d 394 (2d Cir. 2000) .................................................10

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020).................................................................9

*Thyroff v. Nationwide Mut. Ins. Co.*,
   460 F.3d 400 (2d Cir. 2006) .................................................13

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008) ...................................................................8

**STATUTES**

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ..............................1

15 U.S.C. § 1681e ...............................................................................4, 13

15 U.S.C. § 1681h.........................................................................3, 4, 6, 16

15 U.S.C. § 1681i...............................................................................4, 13

15 U.S.C. § 1681n.............................................................................3, 15

15 U.S.C. § 1681*o*...........................................................................3, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 ...................................................................................8

Fed. R. Civ. P. 58 ...................................................................................7

NY UCC 9-210 ......................................................................................11

Uniform Commercial Code.......................................................................1

## INTRODUCTION AND SUMMARY OF ARGUMENT

Appellees Experian Information Solutions, Inc., TransUnion, LLC, and Equifax Information Services, LLC (collectively the "CRA Defendants") respectfully submit this joint brief on appeal. All three of these appellees are credit reporting agencies ("CRAs").

Appellant Mario E. Castro asserts the untenable claim that the CRA Defendants' consumer reports were inaccurate in reporting that he owed money on his mortgage loan serviced by NewRez LLC, d/b/a Shellpoint Mortgage Servicing (hereinafter "Shellpoint")—even though he concededly borrowed the money and did not repay it. His claim is that the never-repaid debt was somehow wiped out by his execution of a promissory note—*i.e.,* that his initial promise (to repay the mortgage loan) was fully satisfied by his making another promise in the form of a promissory note, and that the CRAs' failure to update his mortgage on this basis caused him harm. On this basis, Castro's amended complaint alleged—as relevant to the CRA Defendants—claims for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and New York defamation law.[1]

The district court recognized the absurdity of Castro's allegations and correctly held that Castro's claims failed at the threshold for lack of Article III

---

[1] Castro alleged violations of the Uniform Commercial Code against other defendants, but not against the CRA Defendants.

standing. A plaintiff must show a concrete injury that is "fairly traceable" to wrongful conduct of the defendants—and here, any consequences Castro suffered resulted solely from his own failure to repay the loan, not from the CRA Defendants' reporting. As the district court explained, Castro's amended complaint failed to plausibly allege this element of the claim: "Plaintiff ma[de] no factual allegations" plausibly supporting his fanciful claim that a promissory note "would clear the balance on his Shellpoint mortgage account." App. 21. The district court correctly concluded that "Plaintiff therefore has not plausibly alleged that [he] was thereby injured by [defendants'] conduct. *Id.* And his secondary claims of inaccuracy—that his various credit reports differed on items such as the precise date on which his mortgage loan originated, *see* SA012, ¶ 38—similarly failed to allege any causal connection between these alleged inaccuracies and a denial of credit or any other harm. *See* App. 22-23.

Further, even aside from this failure to allege the requisite Article III harm, dismissal of the amended complaint was in any event appropriate because it failed to state any FCRA claim. Castro's FCRA claims required him to show (among other things) that he was injured by an *inaccuracy* in a defendant's credit report—an "objectively and readily verifiable" *factual* inaccuracy. *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023). Castro's claim that executing a promissory note wiped out his mortgage debt, however, identifies no cognizable

- 2 -

inaccuracy. To begin with, this claim raises no factual inaccuracy, but rather raises a legal dispute with his lender over the legal effect of a promissory note. And "inaccuracies that turn on legal disputes are not cognizable under the FCRA," because "the FCRA does not require credit reporting agencies to adjudicate legal disputes." *Id.* at 269, 270. In any event, Castro's legal claim regarding the effect of a promissory note is frivolous.

As to Castro's secondary claims of inconsistency among the CRAs regarding items such as the account open date, his failure to allege facts showing that any such inconsistency harmed him requires dismissal of his claim for a negligent FCRA violation. *See* 15 U.S.C. § 1681*o*. And his claim for a willful FCRA violation, *see* 15 U.S.C. § 1681n, fails to state a claim because his allegations that the CRAs willfully reported inaccurate information are wholly conclusory.

Castro's defamation claims likewise failed to state a claim. As the district court correctly explained, the FCRA preempts all defamation claims based on information in a credit report except where "false information [was] furnished with malice or willful intent to injure [the] consumer," 15 U.S.C. § 1681h(e), and Castro "does not plausibly allege that the CRA Defendants or Shellpoint acted with malice or willful intent to injure." App. 20 n.9.

The district court's judgment should be affirmed.

## STATEMENT OF ISSUES

1.     Did Castro plausibly allege injury "fairly traceable" to the defendants' actions as required by Article III, when the information that his mortgage loan was delinquent, and any resulting failure to obtain further credit, resulted from his own undisputed failure to make the required loan payments and his self-inflicted decision to treat his execution of a promissory note as wiping out his mortgage loan?

2.     Did Castro establish Article III standing for claims that his various credit reports reported differing information regarding certain details of his delinquent mortgage loan, when he alleged no facts supporting a causal connection between any such details and his alleged inability to obtain credit or any other alleged injury?

3.     Was dismissal of Castro's claim that his promissory note wiped out his mortgage debt appropriate on the alternative ground that it did not state a cognizable FCRA claim under 15 U.S.C. §§ 1681e(b) and 1681i, when that alleged inaccuracy amounted to a mere legal dispute with the lender, and where the legal dispute was in any event frivolous?

4.     Was dismissal of Castro's defamation claims appropriate on the additional ground that the FCRA preempts defamation claims based on information reported in consumer reports, 15 U.S.C. § 1681h(e), where Castro alleged no facts supporting the "malice" exception to such preemption?

5.      Did the district court correctly deny Castro's motion for reconsideration on the ground that it presented no controlling law or factual matters that the court's dismissal order overlooked?

## STATEMENT OF THE CASE

Appellant Mario Castro's amended complaint arises out of a mortgage loan he took out in 2006 for a property in Melville, New York. That mortgage was ultimately assigned to Defendant-Appellant Bank of New York Mellon, Inc., and serviced by Shellpoint.

The crux of the amended complaint, as it applies to the CRA Defendants, is Castro's claim that he eliminated the mortgage debt in 2006 by executing a promissory note, and that the CRA Defendants disseminated "inaccurate and misleading" information by continuing to list the mortgage loan as an outstanding (and delinquent) debt. SA008, 012 at ¶¶ 21–22, 38. Specifically, Castro alleges that he has "already tendered payment . . . for the full amount of the credit loaned . . . in the form of a 'promissory note' [] which was accepted as collateral for the loan" in March 2006. SA012 at ¶ 38. Because the promissory note contained his "original wet-ink signature," *id.* ¶ 36, Castro alleges, it "could be deposited in exchange for federal reserve bank notes[,] which has equal value [as to] what was lent to [][P]laintiff," *id*. ¶ 38. Accordingly, he claims, his debt should be deemed fully repaid as of March 2006, when the "promissory note . . . was accepted as collateral

for the loan of credit in accords with the law." *Id*. On that premise, allegedly "no money is owed to the current creditor/investor . . . and therefore no balance is owed nor should be reported." *Id.*

The amended complaint also alleges that there were certain differences in the loan information as reported by the CRA Defendants, including a six-day difference between the reports as to the date on which Castro's Shellpoint account was opened, and differences in such items as "Date Last Reported" and "Date Last Active." SA011 at ¶ 32. In identifying these differences, however, the amended complaint does not allege which report's details are correct, nor does it allege facts indicating how any consequences purportedly resulted from the alleged discrepancies.

Castro alleges that he sent letters to the CRAs in October 2020 "disputing an alleged mortgage account and all information uploaded by Shellpoint," SA009 at ¶ 26, but the CRAs continued to report the loan information as furnished by Shellpoint. Castro contends that the CRA Defendants failed to conduct a proper investigation, and that they "continue to publish and disseminate [] inaccurate information to other third parties, persons, entities and credit grantors." SA013 at ¶ 43.

On October 13, 2022, Castro commenced an action in the U.S. District Court for the Eastern District of New York. He filed an amended complaint on April 4, 2023. By Memorandum & Order dated September 19, 2024, the district court

- 6 -

granted all defendants' motions to dismiss. As relevant to the CRA Defendants, the district court held that Castro had no Article III standing because his alleged injury did not satisfy the requirement that it be "fairly traceable" to the actions of the defendants. Any injury, the court explained, was self-inflicted: "the only plausible inference is that Plaintiff's own decision to try to satisfy his outstanding mortgage loan balance with a promissory note, as opposed to real money—and not the 'challenged conduct' of [the defendants]—caused his claimed injuries." App. 21. And any alleged injury was likewise not "fairly traceable" to any alleged discrepancies among the various consumer reports, due to the absence of any alleged "facts supporting a causal connection between the inaccuracies and the denial of credit" or any other harm. App. 23.

Castro filed a motion for reconsideration on October 17, 2024, which the Court denied on October 23, 2024, holding that (1) Castro presented no valid grounds for reconsideration, in that "Plaintiff does not present any controlling law or factual matters that the Court overlooked in its Memorandum & Order"; and (2) Castro's complaint that the judgment was signed by the clerk rather than the judge was contrary to Rule 58, which provides for signature by the clerk. App. 26. Castro filed this appeal on November 22, 2024.

## STANDARD OF REVIEW

Where a district court's dismissal under Rule 12(b)(1) for lack of Article III standing is based on the allegations of the complaint itself—i.e., where it is not based on evidence outside the pleadings—this Court "review[s] the district court's decision on such a facial challenge *de novo*." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *see W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008). With respect to Castro's appeal from denial of his motion for reconsideration, "[a] district court's denial of a motion for reconsideration is generally reviewed for abuse of discretion." *D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 756 F.3d 151, 155 n.2 (2d Cir. 2014).

This Court, moreover, is "entitled to affirm the district court on any ground for which there is support in the record, even if not adopted by the district court." *Adirondack Transit Lines, Inc. v. United Transp. Union*, 305 F.3d 82, 88 (2d Cir. 2002).

## ARGUMENT

The district court correctly held that Castro failed to plausibly allege facts sufficient to establish Article III standing. Moreover, for much the same reason that the amended complaint failed to adequately allege standing, it failed to allege a cognizable claim for relief.

I.      **The District Court Correctly Dismissed Castro's Claims Due To His Lack Of Article III Standing.**

The district court correctly held that Castro failed to satisfy his burden of alleging the elements of Article III standing, because the only injury he alleged was caused by his own conduct, not by any alleged wrongdoing of the defendants.

"'At the pleading stage, the plaintiff must clearly … allege facts demonstrating each element' of standing." *Moreira v. Societe Generale, S.A.*, 125 F.4th 371, 384 (2d Cir. 2025) (internal brackets and quotation marks omitted) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)); *see Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020) (plaintiffs failed to establish standing because they "ha[d] failed to plausibly and clearly allege a concrete injury").  Those elements require that "a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Antonyuk v. James*, 120 F.4th 941, 976 (2d Cir. 2024) (internal quotation marks omitted), *cert. denied*, 145 S. Ct. 1900 (2025).  Moreover, those elements must be satisfied for each aspect of Castro's claims:  "Standing is not dispensed in gross.  Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal brackets, quotation marks and citations omitted).

- 9 -

The district court held that, even assuming *arguendo* that Castro had alleged an injury in fact, any injury resulted from his own actions and was not "fairly traceable" to the defendants' allegedly wrongful conduct. The "fairly traceable" element is a "causation requirement." *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992). In particular, as relevant here, "a plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013). Where an injury is "completely due to the plaintiff's own fault," it "break[s] the causal chain." *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000) (citation omitted).

That is precisely the case here. The crux of Castro's claim is that the credit reporting was inaccurate in that his mortgage loan should have been deemed to be wiped out by his promissory note: *i.e.*, although he did not make payments as required, he alleges that he "has already tendered payment to the original lender since March of 2006 for the full amount of the credit loaned to plaintiff in the form of a 'promissory note' . . . which was accepted as collateral for the loan of credit." SA012 at ¶ 38. The amended complaint does not contest his failure to make actual payment, and makes no factual allegations supporting the notion that a promissory note would eliminate the balance on his Shellpoint mortgage account. As the district court concluded, any harm to Castro from defaulting on his mortgage was caused by

- 10 -

his uncontested decision not to make payments, not from his credit reports merely reflecting that failure.

On appeal, Castro fails to counter this conclusion in any relevant way. He protests that the district court was "not in possession of any facts nor conclusion of law to support [its] decision," as "the source of funding and financials has not been produced on the record" and "there were no authenticated records of accounts … as requested by appellant under NY UCC 9-210." Br. at 3. But none of this meaningfully disputes the district court's conclusion that Castro's promissory note did not make his debt disappear, and any alleged injury resulted from his own decision not to make his payments on the loan and thus was not "fairly traceable" to the defendants.

Castro instead seeks to turn attention to the amended complaint's secondary allegations about the CRAs reporting varying details regarding the dates and amounts associated with the loan. But he fails to adequately address what the district court correctly identified as his failure to "identify what injury resulted from these alleged inaccuracies in these credit reports," and "he fails to allege any facts supporting a causal connection between the inaccuracies and the denial of credit." App. 22-23. Castro points to his amended complaint's boilerplate allegations that he suffered harm "in one or more of the following forms," followed by a laundry list of potential injuries ranging from "chilling effect on credit applications," to "loss

- 11 -

of . . . interest in outside activities," to "sensitive stomach." Br. at 4; SA014 at ¶ 44. But the amended complaint does not even allege that *any* particular form of harm actually occurred, *see id.* ("one or more"), let alone allege facts to support any plausible inference that any of the alleged discrepancies caused any of the boilerplate list of harms. *See Carter*, 822 F.3d at 56 (plaintiff must "allege[] facts that affirmatively and plausibly suggest that the plaintiff has standing to sue") (internal quotation marks omitted).

In short, Castro has no cogent challenge to the district court's holding that he failed to adequately allege a basis for Article III standing. The judgment below should therefore be affirmed.

## II. The Amended Complaint In Any Event Failed To Allege Any Cognizable Claim.

Castro's claims also fail on the alternative ground that his amended complaint fails to state any cognizable claim against the CRA Defendants. The CRA Defendants argued precisely this in the district court: that Castro's FCRA claims fail to state a claim as a matter of law. *See* SA129; SA137-40. This Court may affirm dismissal of Castro's claims on the grounds relied on by the district court or on any other basis. *See 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 125 (2d Cir. 2011) ("Although our conclusion rests on a ground not considered by the district court, we may 'affirm a decision on any grounds supported

- 12 -

in the record. . . .'") (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 405 (2d Cir. 2006)).

## A. The FCRA Claims

Castro's contention regarding the purported effect of his promissory note fails to state a claim under the FCRA because it does not allege any cognizable inaccuracy.

Castro's FCRA claims under 15 U.S.C. §§ 1681e(b) and 1681i require that he identify a material inaccuracy in his consumer report. In particular, this Court has expressly held that "to prevail on a section 1681e claim against a consumer reporting agency, it is necessary for a plaintiff to establish, among other things, that a credit report contains an inaccuracy." *Mader*, 56 F.4th at 269; *accord Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021). The same requirement applies to claims under § 1681i. *See Cohen v. Equifax Info. Svcs. LLC*, 827 F. App'x 14, 18 (2d Cir. 2020) (no cognizable 1681i claim "[i]n the absence of any dispute that . . . concerned information for which there is a genuine dispute of fact regarding accuracy"); *Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 286 (5th Cir. 2025) ("[o]ther circuits agree" that a 1681i claim requires plaintiff to show the reported information was inaccurate).

Castro's claim that his promissory note satisfied and eliminated his mortgage debt is not a cognizable claim of inaccuracy within the meaning of the FCRA. Even

if Castro's theory about the legal effect of a promissory note were a tenable one, it would amount to no more than a legal dispute with the lender, not a factual inaccuracy. And "inaccuracies that turn on legal disputes are not cognizable under the FCRA." *Mader*, 56 F.4th at 270. Rather, "claims under the FCRA require factual inaccuracies to be actionable," because "the FCRA does not require credit reporting agencies to adjudicate legal disputes." *Id.* at 269-70.

Furthermore, even if that were not the case—and the legal question as to the effect of Castro's promissory note could somehow be deemed a factual issue—that would avail Castro nothing, because his contention is frivolous. Courts have routinely rejected claims like the one made by Castro here—namely, that a promissory note or similar instrument can satisfy payment of a loan—as frivolous and insufficient to satisfy a claim. *See, e.g., Simon v. Bank of America, N.A.*, 2021 WL 148650, *8 (E.D.N.Y. Jan. 15, 2021) (debtor's claim that she had paid her loan by submitting an "Equitable Remittance Coupon" was "vexatious and frivolous"); *see also* SA138-39 (collecting cases). There is no legal basis for Castro's claim that executing a promissory note eliminated his mortgage debt. There was thus no inaccuracy in reporting the mortgage loan as an outstanding debt, and no cognizable claim under the FCRA.

Castro's claim that there were certain discrepancies among the CRAs—he claims, in particular, that "[a]s of May 2022 . . . the open dates and the dates of last

payments are not identical throughout all 3 bureaus," SA009 at ¶ 27—likewise fails to state a claim. A "complaint alleging a claim for negligent violations of the FCRA under [15 U.S.C.] § 1681*o* must allege actual damages" from the alleged FCRA violation. *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 240 (S.D.N.Y. 2014). Here, Castro alleges no *actual* damages, only a laundry list of harms he *might* have (but apparently might not have) suffered, asserting: "Plaintiff suffered concrete harm in one or more of the following forms . . . ." SA014 at ¶ 44. And in any event, the amended complaint—as the district court noted, *see* App. 22-23—alleges no facts supporting an inference that any of these harms resulted from the alleged discrepancies Castro identifies.[2]

To the extent Castro claims these discrepancies amounted to a willful violation of the FCRA, 15 U.S.C. § 1681n, his wholly conclusory allegations that the Defendant CRAs acted willfully require dismissal of the claim. Allegations of willfulness that "are pleaded in conclusory fashion" fail to state a cognizable claim under § 1681n, *Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 398 (S.D.N.Y. 2014); *accord Farkash v. RJM Acquisitions Funding, Inc.*, 2012 WL 1948643, at *3 (S.D.N.Y. May 29, 2012), and the amended complaint alleges no facts supporting a

---

[2] In addition, as the district court noted, the "Amended Complaint does not indicate which version of the account information is correct." App. 22 n.11. As such, it fails to allege, as required, a factual inaccuracy as to any of the alleged discrepancies.

plausible inference that the CRAs willfully published inaccurate information concerning Castro.

### B.    The Defamation Claims

Castro's defamation claims are expressly barred by the FCRA.  The FCRA preempts "any action or proceeding in the nature of defamation ... or negligence with respect to the reporting of information against any consumer reporting agency ... based in whole or in part on [a consumer] report[,] except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e).  Accordingly, Castro's defamation claims are preempted unless his complaint "plausibly allege[s] that [the Defendant CRAs] acted with malice or willful intent to injure." *Rogers v. Equifax Info. Servs. LLC*, 2024 WL 2862363, at *4 (E.D.N.Y. June 6, 2024).

As the district court correctly observed, the amended complaint does not plausibly allege such malice or intent to injure. *See* App. 20 n.9.  And Castro's brief on appeal points to nothing in the amended complaint that would provide a basis for any different conclusion.  His preemption claims are therefore barred by the FCRA.

### III.    Castro's Challenge To The Denial Of His Motion For Reconsideration Is Without Merit.

Castro identifies no abuse of discretion in the denial of his motion for reconsideration.    The standard for granting reconsideration "'is strict, and reconsideration will generally be denied unless the moving party can point to

controlling decisions or data that the court overlooked.'" *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). As the district court correctly observed, Castro's motion merely "advance[d] the same arguments" that were rejected in the district court's order dismissing the case. App. 26. And Castro's additional arguments that the judgment could not be signed by the clerk, or that the district court lacked jurisdiction because its alleged errors in deciding the dismissal motion placed it "beyond legitimate judicial authority," Br. at 6, are self-evidently meritless.

## CONCLUSION

The judgment should be affirmed.

Dated: July 8, 2025

By: /s/ Meir Feder
    Meir Feder
    JONES DAY
    250 Vesey Street
    New York, New York 10281
    (212) 326-7870

    *Counsel for Defendant-Appellee*
    *Experian Information Solutions,*
    *Inc.*

    Camille R. Nicodemus
    QUILLING, SELANDER,
    LOWNDS, WINSLETT &
    MOSER, P.C.
    10333 N. Meridian St., Suite 200
    Indianapolis, IN 46290
    (317) 497-5600, Ext. 601

    *Counsel for Defendant-Appellee*
    *Trans Union LLC*

    Eric F. Barton
    SEYFARTH SHAW LLP
    1075 Peachtree St. NE, Suite 2500
    Atlanta, Georgia 30309
    (404) 885-6772

    *Counsel for Defendant-Appellee*
    *Equifax Information Services, LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2025, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the appellate ACMS system.

I certify that service on non-ACMS users was effectuated by third party overnight courier on:

Mario E. Castro
c/o 419 West Hills Road
Melville, NY 11747

I further certify that all other participants are registered for ACMS and will be served via the appellate ACMS system.

*/s/ Meir Feder*
Meir Feder

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) as modified by this Court's Local Rule 32.1(a)(4)(A) because this brief contains 3,898 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2016, in Times New Roman style, 14 point font.

July 8, 2025

/s/ Meir Feder
Meir Feder